and this appeal. This is a really unique case in that there were several independent errors that were made by the prosecutor, defense counsel, and the court, all of which undermined the integrity of the plea proceedings and made Mr. Pierre's guilty plea unknowing and involuntary. And it's also unique because in this case the government has conceded that multiple errors did occur in that proceeding, including most notably the fact that the government made an illusory promise to Mr. Pierre in exchange for him pleading guilty to the most I think that's the most straightforward and obvious reason for vacating the plea here before moving on to the other rule 11 errors by the court. With respect to the plea agreement, there's no dispute that the government promised not to apply recidivist enhancement that would have increased the mandatory minimum on both counts by five whole years if he went to trial and got convicted. And that was in exchange for him pleading to the most severe charge, the conspiracy to distribute 280 grams. And it's also undisputed that that was a meaningless empty promise because there was no possibility of applying that recidivist enhancement. And so if he had gone to trial he would have faced the same statutory minimums as if he pled. And so there doesn't appear to be any dispute about those first two prongs of plain error review, the clear obvious error, and really the question here is whether there's a reasonable probability it affected Mr. Pierre's substantial rights. And that's a really important point because in the government's briefing they seem to confuse what that standard is, repeatedly arguing that we can't prove on this record that Mr. Pierre would not have pled guilty. But that's not the bar that this court needs to find, and that's not the standard we have to meet. The question is only whether there's a reasonable probability of a different outcome. And in Dominguez Benitez, the Supreme Court explained that that standard means just basically sufficient to undermine the confidence in the outcome of the proceeding. I'm sorry, I thought it was undisputed that the prejudice question is whether your client would have entered the agreement. Do you mean that the prejudice inquiry is whether he would have been sentenced to the same number of months in prison? No, the prejudice inquiry here is that whether there's a reasonable probability he wouldn't have entered the plea, correct? Got it. And so on this record, what's the evidence that—I noticed in your brief you say, well, the dismissal of count two did nothing for him. But the dismissal of count two is the—obviously not the conspiracy charge, it's the actual violation of the Controlled Substances Act. As I read it, the terms that your client could have gotten on count two would have been somewhere between five years and 40 years, obviously way more than he got. So I don't understand how the dismissal of count two has nothing to do with this. In this scenario, any benefit that was conferred by that dismissal had at most a marginal benefit to him. And that's because if you look at the comparison between those two counts, they both arose from the same transaction, right? They arose from this delivery of 156 grams. There's one substantive charge for that, and then there's a conspiracy that implicates him in broader activity or broader involvement. And so for those two counts, the substantive count was 5 to 40, and the conspiracy was 10 to life. Under the guidelines, those would be grouped for guideline calculation purposes. The sentencing guidelines advise that those types of counts run concurrently together when you receive the sentence. And so there would have been no, I guess, tangible impact on his exposure at sentencing, even if he had pled to both counts at the same time, rather than just pleading to the more severe charge. But if you're the defendant in this circumstance and you're thinking about, okay, I've got a deal from the government and I can get 10 years, or I can reject the deal from the government and I can get somewhere between 5 and 40, I mean, it's not complete. On a record on direct appeal, where we don't have any evidentiary hearing about the negotiations and the plea agreement, we don't have any evidence about the two different lawyers that Mr. Peer had and what they were advising him, it's hard to sort of say, well, it satisfies the plein air prong three standard to say 120 months versus 40 years. It doesn't seem like an irrational deal to strike. I think there's two points, I guess, in response to that. The first is that there was nothing stopping the court from giving him 40 years. Under this plea agreement, he was agreeing to the 10 to the life for the conspiracy count. It wasn't 11C1C where the court was required to give him 10 years as a result. And so his exposure to a potential 40-year sentence, for example, was not eliminated or at all changed by the dismissal of count two. And I think the other important point is to just bring it back to this reasonable probability standard. There's always going to be a thousand reasons we can speculate for why a defendant might do something, might plead, might not plead, might make a decision, and there will always be scenarios where other people might have made different decisions or we might believe that that was the wise decision anyway, despite an agreement. That's not really the question here. The inquiry here is whether this record creates the reasonable probability and it's sufficient to undermine the confidence in this outcome. And here, I think the two main pieces of record, Evans, to answer your first question, the first one is just the prosecutor's representations at that rearrangement proceeding. The prosecutor himself made clear that this was a material and central provision of the agreement to plead guilty to count one, stating that in exchange for pleading to count one, they were going to agree not to enhance him and not increase his mandatory minimum to 15 years. And the second, I think, important piece of record evidence is the objective significant benefit of this agreement and of this foregoing of the enhancement from his perspective. This doesn't require speculating about what was specifically in his mind, but any objective person looking at this benefit and comparing going to trial versus pleading can see that there was a tangible benefit to pleading guilty and not going to trial. As we talked about before, if this enhancement had applied and he had gone to trial, he would have necessarily, even if acquitted of the conspiracy, faced a 10-year mandatory minimum if convicted of count two, and he would have faced the additional risk of 15-year minimum. That's an extra 60 months he would have to spend in prison if convicted of consider the reality that he was not subject to the enhancement. He was given a 10-year minimum from the plea agreement, and that is the worst-case scenario of the statutory minimum he would face at trial, and he would have the possibility of a five-year minimum if he was acquitted of this conspiracy. And I think if you look at the broader record, we know that this drug quantity issue was a constant source of problems, and I'll get to the Rule 11 errors later, but we know that he wasn't explained the drug quantity element. We know that his specific factual admissions about his specific conduct all related back to this one delivery of 156 grams, and we know that at sentencing, he repeatedly referred to this as the worst mistake that one day. He kept referring to his mistake being limited to that day, and in his post-conviction filings where he asserts he didn't believe he was supposed to be sentenced under the B1A statute. That both reflects a confusion about what that statute meant and what he was pleading to, but it also shows that this question about disputing his involvement in the broader conspiracy was a central issue and a central concern for him, which all contributes that reasonable probability that if he understood he wasn't really getting any tangible benefit from pleading to the or agreeing to this plea agreement, that he would have decided to proceed to trial and taken a different course. Counsel, everything I heard you just say seems to support equally, if not perhaps even more so, your ineffective assistance at counsel claims, and I understand, you know, we often don't do, you know, address those on direct appeal. The whole reason for that is so that we can have a fuller record about what, who said what, what the, what, and obviously there's two different lawyers at the trial stage, and so I guess what I'm wondering, oh and I should also say as to the legal standards that we're supposed to apply, most of your plain error cases, the good plain error cases for your side, involve claims of ineffective assistance at counsel, presumably for the exact same reason that we often don't address those on direct appeal. So I'm wondering if you, what would be the best case to say that in a circumstance where the alleged error in the plea agreement is a thing that says the government agrees not to do x and y, that we reach that on your first claim as opposed to your second claim, that is your ineffectiveness claim, or relatedly, do you have a case where we would address all of this, including the ineffectiveness claim, on direct appeal as opposed to waiting for a 2255 record? I think to your first question, I would say that the best cases for reaching it on the first issue and saying that this, this promise that was an empty promise, is the basis and therefore we're going to reverse some plain error. Even though they weren't plain error cases, I would say the Amaya and the Kennedy v. Maggio case are probably the best ones. The Kennedy v. Maggio is obviously a... That was an IAC, right, exactly. But I think those illustrate how critical this type of error is and evidence why this is so significant and requires reversal. I understand that those were not plain error cases. I don't think that there is such a rare situation where a promise like this that clearly has no meaning and is clearly a mistake by the prosecutor also goes unnoticed by defense counsel when advising the client of the plea. And so there isn't really an analogous case for that, I think, for the plain error standard. I would just rest on the fact that the reasonable probability standard only requires a probability sufficient to undermine confidence in the outcome, and I think this record clearly shows that. With respect to the IAC claim, I think the best case, Haring v. Estelle, I think is the best case for establishing that this is clearly deficient performance. I'm sorry, I don't mean to interrupt, but obviously Haring v. Estelle is addressing an ineffectiveness claim in a habeas petition. So I guess what I'm trying to get at is in the posture of our case where we're on direct appeal, do you have a good case that would say, no, no, go ahead and get to the IAC claims, get to the fact that really what happened here is that there was a mistake in the plea agreement, two different defense lawyers looked at this and failed to advise my client about the content that was an empty promise, and you should do that on direct appeal. Don't wait for the post-conviction evidentiary record. That's kind of what I'm getting at. Right. I think probably the best case is Rosales or Zoco, because that one, they did address an IAC claim on direct appeal. Granted, it was to deny the claim on a prejudice prong, but I think in that case, they recognized that there was, out of judicial efficiency, there was no reason to send this back down to a 2255 posture because they could determine it based on the record. And so I think applying that principle here, that shows, you know, as we can see from this record, this was a clear misrepresentation of the law as it related to the facts. It was not corrected by defense counsel. So I think that clearly establishes the deficient performance prong, and the prejudice prong largely overlaps with this reasonable probability question anyway. So I do think that that, you know, in the interest of judicial economy supports reaching this claim here because the record is more than sufficient to establish the claim without needing to get more information about the, you know, relationship between client and counsel because we can see from the record that that was improper advice. And unless there are any further questions, I'll briefly touch upon the Rule 11 issues and probably finish on rebuttal. With respect to the Rule 11 errors by the district court, there's obviously two separate errors. The failure to properly advise the defendant about the drug quantity elements of the conspiracy charge, and also the failure to ensure there was an adequate amount of evidence to support the claim elements. The government essentially concedes the plea colloquy error, it appears, but disputes the factual basis inadequacy. And on both points, they dispute that there's a reasonable probability he would not have pled guilty, although, again, framing it as not proving that he would not have pled guilty, which is not the inquiry. In this case, the plea colloquy issue alone more than satisfies the plain error standard on this record because the reasonable probability that he would not have entered the plea if he'd understood the drug quantity elements is clear from the court's explanation. It shows that if he was guilty of any agreement to distribute any quantity of drugs, he was guilty of count one. That is what the court's explanation conveyed to him, and so I think that creates a reasonable probability he would not have pled. As we know from the record, he never admitted to specific conduct or participation or knowledge of any broader drug activity. The PSR even described him as a mere courier and only attributed 156 grams to him, only adding the 280 based on that single stipulation. The wiretap evidence summarized in the PSR doesn't implicate him beyond this one transaction, and his statements both at sentencing and after sentencing clearly show that he was he only believed he was responsible for that single delivery. Now, the government points to that quantity stipulation, the factual basis, and just that'll also go to the factual basis area issue, but that also doesn't negate the record evidence showing his misunderstanding here, and I think it's important to note that in Lujano Perez, in that case, the court, when there wasn't a proper explanation of elements, the court looked for other evidence in the record explicitly showing the defendant's understanding of the elements, and we don't have that here. We just have this legal statement basically stipulating to a legal element, and we can't rely on the assumption that he simply understood because he pled guilty, which is kind of what the government seems to suggest, and that was made clear in Lujano Perez as well. Also in Adams, the 1992 case from this court, the court identified three core concerns, and one of those being that whether the court completely failed to address the understanding of the nature of the charges, and when one of those core concerns is completely ignored, the court said that itself affects substantial rights. We don't even get into a detailed fact analysis because that's a core concern that can't be harmless, and I see my time has expired unless the court has other questions. You've saved some time for rebuttal. Thank you, Ms. King. Mr. Daly? May it please the court, Kyle Daly for the United States. This case was indicted before the First Step Act, and the government concedes that it did not recognize how that law affected Mr. Pierre's multiple offender status and that he was no longer a multiple offender at the time of the plea. As counsel has told the court, what counsel needs to show is a reasonable probability that he would have gone to trial but for the government's mistake, and as we've discussed, all the cases that counsel relies upon involve cases where there are statements of counsel and often of the defendant himself explaining during the plea or in a post-conviction evidentiary hearing why he pled guilty, what the considerations were, and here we have nothing like that. The closest that they can get is the Amaya case. In Amaya, the lawyer brings it to the court's attention. This is why we were pleading guilty. In exchange for this promise, this is why we're pleading guilty. The court says, I'm going to make sure that you get that 5K. The government says nothing, and then he doesn't get the 5K. He moves to vacate it. So here, we just don't have anything even in that realm where Pierre or his lawyer are talking about the multiple offender status, showing that they are also under the mistaken belief that the government is under, that the multiple offender status is applicable here. We don't know, based on this record, that Pierre's counsel is operating under the same mistake that the government is. It's certainly possible, but we don't know that for sure. Why don't we—why isn't that reasonable, that they were operating under the same mistake, because they're not getting anything out of it? It's a bad deal. It's such a bad—there's nothing to be gained, so they must be operating because they're sophisticated people, normally. Counsel is presumed to be effective, and so to presume the counsel didn't know the law, on this record, I think would— Well, the government didn't know the law, and so why isn't it just pretty parallel that nobody knew the law? Because the lawyer could have recognized that the government was wrong about this and still reasonably chose to advise his client. But there's no—there's nothing that would indicate that either. There's—you know, we have to figure out what's the reasonable probability, not what we know for certain, but what's the reasonable probability that he—whether he would have pled? Yes, Your Honor. The plea agreement is—the promise to drop a multiple offender bill, which the government concedes was meaningless, we didn't know it was meaningless, was not the only thing that he got by pleading guilty. He reduces his guidelines to the mandatory minimum, which he got. The government promised not to prosecute him for other previous drug crimes. That might have been important to him. Now, I understand that we're talking about reasonable probabilities, but there's got to be—generally based on this court's case law, there's—before it finds ineffective assistance of counsel, there's something in the record where the lawyer says on the record or swears under oath, yeah, I misunderstood the law. And here— Well, it's unusual for the government to be here conceding that it misunderstood the law, and I'm not faulting the government for that, but it's admirable that it became known to the court. But that's—this is a highly unusual case for that reason. It is a highly unusual case, and whether or not Pierre's counsel was under the mistaken belief that the government was under can be resolved. It just can't be resolved in this proceeding. Pierre asks this court to read a lot of things into the record that we think would be a stretch too far. So, Pierre discusses the fact that it took a long time for Pierre to plead, almost two years to plead, but that doesn't mean that the multiple offender offer to drop the multiple offender status wasn't made long before that. We don't know what ultimately made him plea, but we know that there was his first lawyer engaged in about a year's worth of negotiations. So, we think it would be unfair for this court to assume that before—right before he pled guilty, that's when the government said, you know what, we're going to drop this multiple offender bill, and that's what made him take this deal. They also pointed to the probation officer's characterization of the deal. The deal speaks for itself. The probation officer's PSR doesn't say anything about Pierre's thought process. And Pierre says here that the evidence on the distribution count was very strong, but that doesn't mean that by the time he pled, he wasn't—he didn't believe after speaking to his lawyer who had reviewed all the discovery that we don't have in the record that the conspiracy count was also strong. And like we discussed, this multiple offender enhancement, the dropping of it was not the only thing that he gets by pleading guilty. He gets to reduce his guidelines to the mandatory minimum, which is exactly what he got. Can you address the issue with the quantity? Is there a problem with this considering stipulation in the co-defendant's guilty plea in determining whether there's a factual basis from this defendant's plea? There's a dispute between the parties as to whether or not this is in the record. We acknowledge that it is not in the record on appeal. It's in the record in the district court, which we know is reviewed by the district court. If this court chooses to disregard that, we don't have any issue with that because, more importantly than Bickham's plea, the same exact sentence is in Pierre's PSR that he swears that he reviewed and that neither he nor his lawyer objected to prior to or during sentencing. And so we know that on plain error review, when this court is looking at a factual basis, it doesn't look just at the factual basis, but it looks at the PSR also. The PSR says that on some occasions, meaning more than one, Pierre delivered drugs to BP, the drug dealer. Does it matter under Hildebrand that the district court didn't say that it was relying upon the report to give the factual basis? No, I don't believe so, Your Honor. Under plain error, the court doesn't have to adopt it. But actually, the court did adopt it in this case. The court adopted the factual basis as fact during sentencing. So under the plain error standard, whether or not that issue came up at the time of the plea, that is in the record and that is something that this court can consider. I believe it says that in the Jones case. And also in the Jones case, which we think is about the closest case that we get on the rule 11 issues, here we don't just have a conclusory statement in the PSR. We have more than that. We have an explicit agreement that not only that the government's going to prove that the defendant knew or should have known about the 280-gram amount, but that he did in fact know or should have known about the 280-gram amount. And that is, if it's an error, it is not a plain and obvious one because this court has never said that a court cannot rely on such a stipulation. And that also, of course, goes towards, you know, the reasonable probability whether or not he would have gone to trial. I mean, essentially what he's saying is, if by the time he got to the plea, the judge had included, you know, that last element about his knowledge of the 280-gram amount in his plea colloquy, that he would have decided not to plead guilty after all. And when we have him throughout the record before this being informed, you chart the 280 grams, him stipulating in the factual basis, which he then swears under oath is correct, that he knows about the 280 grams. The idea that him being told by the judge the government's got to prove the 280 grams, it's a bit far-fetched to say that that would have caused him to decide to go to trial and face a higher guidelines range. In sum, the record that we have before us just doesn't establish even a reasonable probability, which is the standard, that he would not have gone to trial but for the government's mistake or either of the Rule 11 issues. You concede that you framed it a little bit inartfully in the briefing? Yes, Your Honor, I can concede that, and we will consider that in the future. Unless there are any further questions, we ask that you affirm. Thank you, Mr. Daly. Ms. Coon, for a vote. Thank you, Your Honor. I'd just like to address a few brief points. The first one, just stepping back very briefly to the plea agreement issues, the government, you know, in explaining why they believe that a reasonable probability standard hasn't been met, they basically just speculate about different scenarios that might have happened in the background and repeatedly frame this as primarily just an IAC claim as opposed to both an IAC claim and a fatal flaw in this plea agreement. And I would just urge the Court to remember that, you know, this reasonable probability standard does not require us to know exactly what happened, why he pled, when he decided to plead, or anything like that. It just requires this reasonable probability be met. Also, the government briefly mentioned that, you know, he got a guidelines reduction as a result of this. But I think it's important to note that pleading guilty will always result in a guidelines reduction for acceptance. You don't need to enter a plea agreement for that. So that's not an actual benefit of the plea. And in fact, the prosecutor only stated as the exchange at the rearrangement, the single dismissal of the account, which we've already discussed, the minimal, if any, benefit from, and this recidivist enhancement. With respect to the PSR, going back to Judge Elrod, you were talking about Hildebrand, the Court's case law is very clear that the district court has to explicitly state if it is going to rely on the PSR for the factual basis. And so with respect to the clear, obvious error question, we can't look to the PSR for that question. The Court can look to the PSR for the reasonable probability standard, but I would direct the Court's attention to its previous case law, specifically in Rome, stating that a recitation of the conclusions of the prosecutor in the PSR is not something that can be considered. And if you look at the cases where the Court has looked to the PSR to fill these holes for the factual basis, it's cases where the PSR includes other admissions by the actual defendant. In this case, the PSR explicitly stated that the offense conduct section contained information provided by the prosecutor, and it was based on law enforcement reports. We know that that obviously came from a different defendant's factual basis because it's verbatim recited there. And it was information that was learned by law enforcement during the investigation. These weren't admissions by Mr. Pierre. And if you look at the Kessy unpublished case from 2006, where a conviction was vacated, the Court actually rejected a very similar argument by the government. The government tried to rely on the PSR and testimony from an agent to fill holes in the factual basis, and the Court said that contrary to the government's suggestion, the factual basis must consist of the defendant's admitted conduct. And the fact that the defendant hadn't objected to the PSR and remained silent as the agent gave their version of events didn't change that analysis. And then similarly, for in Carrillo, a Tenth Circuit case, that's also analogous. It was a similar situation where a defendant admitted to a 150-gram transaction, pled to a conspiracy involving 100 grams, and the record simply didn't provide any basis for him, and that his single purchase was an act intended to further the aims of the larger conspiracy. Now, with respect to the stipulation in the factual basis, that is considered, that is basically a recitation of one of the drug quantity elements, the reasonable foreseeability element. And this Court has repeatedly stated, and the Supreme Court has stated, that in order to assess a factual basis, you have to compare the specific factual conduct admitted by the elements of the crime. It's not enough that a defendant simply admits to the elements as a legal matter. And in this Court's case law, there have been scenarios where the Court has looked at these elements and said, OK, well, he pled guilty, and he was aware that this specific element was in it, and that has not been sufficient for a factual basis. For example, in the 1992 Adams case, it was a misprisonment of felony that required concealment of the crime. They consider the charging document as part of the record, which stated that he knowingly concealed it. And the prosecutor even injected that at the reinman and said, and the defendant knowingly concealed it, and the defendant didn't object. And the Court said that that was not sufficiently specific, because it failed to allege any facts that would indicate that Adams took affirmative steps to conceal the crime. And so I think that's analogous here, because it shows that even, you know, you would think might be an obvious term, but that is a legal element, and it's not enough for a client to simply say, yes, I satisfy that element with my conduct. He has to admit to specific actions that the Court makes a determination to satisfy that element. And that's what's required of Rule 11. And if the Court has any other further questions, I'm happy to answer those. Thank you, Ms. Kuhn. Thank you. Your case is under submission. Last case for today, Harris County.